UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 18-10482 |
| TY DWAYNE ANGERON | SECTION "B" |
| DEBTOR | CHAPTER 11<br>SMALL BUSINESS |

## **MEMORANDUM OPINION**

This matter came before the court on October 3, 2018 as a hearing on the confirmation of the debtor's amended plan of reorganization (P-126), and the objections thereto filed by creditor Narinda Gupta (P-140), and by the U.S. Trustee (P-145). The court has already denied confirmation of the debtor's plan of reorganization by order dated August 10, 2018. Four days after denial of confirmation, the debtor filed this second plan, which is not substantially different than the plan already rejected by the court. Accordingly, this time, the court will set forth specifically, the reasons the plan cannot be confirmed in its present form.

The debtor is a member of several limited liability companies, and through these he engages in the management of hotels. The debtor earns a substantial amount of money, and the reason for the filing of the petition under Chapter 11 of the Bankruptcy Code stems from litigation between the debtor and creditor Narinda Gupta. Gupta has filed a proof of claim in the amount of $2,150,687. An adversary and an objection to claim have been filed with respect to that claim, and the matter is set for trial on February 11, 2019.

The U.S. Trustee objects that the plan is not feasible based on the projected disposable income and the projected plan payments. The U.S. Trustee also objects that the plan calls for payments to be made by non-debtor parties, i.e., the debtor's wife, and the debtor's business

1

partner. Finally, the U.S. Trustee also objects that the plan does not provide an analysis of the calculation of the debtor's disposable income.

Gupta joins the U.S. Trustee in objecting that the plan is not feasible. Gupta also objects that the plan does not call for all disposable income to be paid to unsecured creditors.

At the confirmation hearing, the debtor entered into evidence a projection of his income and expenses covering the remainder of 2018, as well as 2019 and 2020.[1] The debtor testified in support of these projections, and he was cross-examined by both the U.S. Trustee and Gupta. No other witnesses testified at the hearing.

**I.      Section 1129(a)(15) of the Bankruptcy Code.**

A debtor's plan of reorganization in a Chapter 11 case must conform to the requirements of 11 U.S.C. §1129. Section 1129(a)(15) of the Bankruptcy Code states:

> In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—
> (A)     the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B)     the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

Thus, in a case such as this, where the debtor is an individual, and an unsecured creditor such as Gupta objects to plan confirmation, the court must look to the projected disposable income of the debtor for the five years following the first plan payment date, determine what that number is, and then ensure that at least that amount is distributed under the plan. Contrary to the objection of Gupta, this does not mean that this is the amount that must be distributed to the objecting

---

[1] Debtor Exhibit 3. The projections also included past income and expenses from 2018, from the date of the filing of the Chapter 11 petition.

creditor, or even all of the unsecured creditors. The Code requires only that this amount be distributed under the plan.[2]

The court next looks to what constitutes the disposable income of the debtor. Section 1325(b)(2) defines "disposable income" as the current monthly income received by the debtor less amounts reasonably necessary to be expended,

> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor. . .; and
>
>> (ii) for charitable contributions in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
>
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

For the debtor in this case, then, the court must determine the current monthly income, and then subtract the reasonable monthly expenses.

Current monthly income is calculated by averaging the debtor's monthly income during the six full months preceding the filing of the bankruptcy petition.[3] The debtor's schedules list his current monthly income as $36,972.[4] A look at the adjusted gross income on the debtor's 2016 tax return shows an average income of $34,417 for 2016.[5] According to the monthly operating reports the debtor's average monthly income since filing his bankruptcy petition has been $29,274. At the evidentiary hearing on plan confirmation, the debtor projected average monthly income for the remainder of 2018 and 2019 at $26,000 per month, with that income increasing to $30,000 per month in 2020. Although both the U.S. Trustee and Gupta object that

---

[2] *In re Pfiefer*, 2013 WL 5687512 (Bankr.S.D.N.Y.); *In re Ferch*, 333 B.R. 781 (Bankr. S.D.Tx. 2005).
[3] *Hamilton v. Lanning,* 560 U.S. 505, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010).
[4] Form 122B filed at Rec. Doc. 22. Form 122B requires the debtor to calculate current monthly income using the six months prior to filing the petition for relief.
[5] The debtor's 2017 tax return was not filed with the court or provided to the U.S. Trustee, so the court does not have those figures available to it.

this projected monthly income is too speculative, the court finds that the income projections are not unreasonable, given that the current monthly income from form 122B is even higher.

The objections seem to stem from the fact that the debtor did not have underlying documentary support for his projected income, but as *Hamilton v. Lanning* holds, all that is necessary to determine current monthly income is to look at the average income in the 6 months preceding the filing of the bankruptcy petition. The court may then deviate from this number using the "forward looking approach" outlined in *Hamilton v. Lanning* if the court determines that this is the type of unusual case in which such an examination of the debtor's future income and expenses is warranted. Here, there is nothing that persuades the court the forward looking approach is really necessary. The debtor's work situation has not changed significantly, and the objectors point to no other circumstances that are particularly unusual with respect to the debtor's income.

Reasonable monthly expenses for a debtor above the median income, such as is the case here, includes those expenses specified in §707(b)(2).[6] Section 707(b)(2) references the IRS National Standards and Local Standards as the benchmark for calculating the debtor's monthly expenses. These expenses are based on family size. The debtor has a family of three.[7] The IRS National Standards for food, housekeeping supplies, apparel & services, personal care products & services, and miscellaneous for a family of three is $1,384.00. IRS allowable living expenses transportation standard for ownership costs of two vehicles is $994; the operating cost for the southern region of the U.S. is $392. The IRS local housing and utilities standard for St. Tammany Parish, Louisiana, where the debtor resides is $1,865. The housing and utilities

---

[6] *Id.*

[7] There were some expenses in the monthly operating reports for a second child, but no other child was claimed on the debtor's schedules.

4

standards include mortgage or rent, property taxes, interest, insurance, maintenance, repairs, gas, electric, water, heating oil, garbage collection, residential telephone service, cell phone service, cable television, and Internet service. Although the debtor has scheduled amounts in excess of these figures, this is what he is entitled to claim unless he puts on specific evidence to support higher amounts, which he did not. The debtor also claims a monthly childcare expense of $825, charitable contributions of $750, $94 for disability insurance, $0 for health insurance and $250 for medical and dental expenses, and he is likely entitled to claim these amounts. Thus, $6,554 would appear to be a ballpark figure for the reasonable monthly expenses the debtor can claim absent an evidentiary showing that he is entitled to more.[8]

The debtor also has business expenses monthly ranging from a low of $0, to a high of $2,337.34. Since the filing of the petition, the average monthly business expenses have been $844. The debtor is entitled to present additional evidence specific to this category of expenses if he feels this is needed.[9]

The five-year projected disposable income of the debtor, then is the monthly income less the reasonable monthly expenses. Using the current monthly income of $36,972 less the scheduled expenses, calculated above, of $6,554, the figure is $30,418. Over five years, then, the total that must be paid under the plan is $1,825,080. Using the debtor's projected income of $26,000 from the confirmation hearing, the number is $19,446, rising to $23,446 after December of 2019, the total to be paid under the plan over a five year period is $1,358,760.[10]

---

[8] Of course the debtor may amend his schedules to provide more accurate figures or present evidence that changes these figures; the court's calculations are merely for illustrative purposes.
[9] It is possible that some of the expenses in the monthly operating reports that appear to be in the personal expense category are actually business expenses.
[10] This assumes the income of $26,000 per month for all of 2019, and $30,000 per month thereafter with the plan going effective in January 2019. That is not to say that this is what will happen, rather this is for illustrative purposes.

The current plan provides an end date of June 2035, which is problematic, because § 1129(a)(15) the code requires the debtor to commit funds "during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer." If the end date for the plan is June 2035, then the plan continues on for approximately 16 years. This would require the debtor to contribute between $4,453,632 and $5,840256, depending on which of the above figures is used. Clearly, the debt owed to Gupta will be satisfied long before this if the debtor pays his disposable monthly income into the plan every month. The requirements of the Bankruptcy Code and the debtor's proposed time frame for repayment simply do not work.

**II.**     **Section 1129(b)(2)(B), the Absolute Priority Rule and the New Value Exception.**

A second problem that no one has raised is that §1129(b)(2)(B) requires that in a case such as this one where there is a class that does not accept the plan, the plan must provide that each holder of an unsecured claim "receive or retain on account of such claim such property of a value, as of the effective date of the plan, equal to the allowed amount of such claim;" or that the holder of an interest that is junior to that unsecured claim will not receive or retain under the plan any interest in property, except "that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115." Essentially, this means that unlike in a Chapter 13 case, unless the debtor pays all objecting unsecured creditors the present value of their claims in full, the debtor cannot retain any pre-petition property. There is some disagreement as to whether this includes property to which the debtor is entitled to claim an exemption, but that issue has not been raised here, so the court need not concern itself with that question.

6

Although there is some disagreement among the courts as to how §1129(b)(2)(B) should affect the individual debtor, the Fifth Circuit has held that this "absolute priority rule" applies to individual debtors.[11] In this case, it has been proposed that both the debtor's non-filing spouse and the debtor's non-filing business partner make contributions to the plan. Perhaps this constitutes some sort of "new value" contribution, although the debtor makes no mention of this in his plan. For the "new value" exception to apply there must be 1) a contribution that is new capital; 2) the contribution must be necessary for a successful reorganization; 3) the contribution must be in money or money's worth; and 4) the contribution must be reasonably equivalent to the value of the property acquired by the equity holders (or in this case the individual Chapter 11 debtor).[12] Here the debtor's plan proposes that the business partner contribute $5,000 per month until the plan is completed, presumably until June 2035, which would be almost $1 million dollars, and the debtor's wife would contribute $2,532 per month for some unspecified period of time. The value of the property to be retained by the debtor is scheduled as $5,712,180, so the new value proposed is not reasonably equivalent to the scheduled value of the property to be retained.[13]

The court also notes that despite the objection of the U.S. Trustee, it could find no cases or authority containing a prohibition against the debtor's wife and/or business partner contributing funds to the plan. The court suspects the real objection was that the wife and business partner were not made available for examination at the confirmation hearing, although the debtor did proffer affidavits from each of them attesting to their willingness to make

---

[11] *In re Lively*, 717 F.3d 406 (5th Cir. 2013).
[12] *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106. 60 S.Ct. 1, 84 L.Ed. 110 (1939); *In re OCA, Inc.*, 357 B.R. 72, 90 (Bankr. E.D.La. 2006)
[13] The court notes, however, that the debtor has scheduled the value of the stock in several privately held Limited Liability Companies as $4,800,000, which the court suspects is completely unrealistic; it is unlikely that these membership interests are worth anything to anyone other than the debtor. No evidence to the contrary has been presented though, so for the time being, the court accepts this value.

payments under the plan.[14] The debtor's schedules state that his wife's monthly income is $3,000, so she is committing almost all of her scheduled income to plan payments, which certainly raises questions of feasibility. When the U.S. Trustee raised this point at the hearing, the debtor testified that his wife's income had increased to $5,000 per month, but other than the debtor's testimony, there was no evidence offered to show this increase. Similarly, there was no evidence of the business partner's ability to make these payments. As previously stated, neither the wife nor the business partner was available to testify.

Although there appears to be no prohibition of plans based on third parties making plan payments, due to the feasibility objections the court cannot confirm this plan without more detailed information about the third party's ability to make those payments. Further, the court cannot confirm an individual Chapter 11 plan in which the debtor retains property unless all objecting creditors are paid in full, or new value has been contributed by the debtor. The details of this plan are sufficiently unclear that the court cannot determine that these requirements have been met.

### III.  Feasibility

One other failure of the debtor's plan, as pointed out by Gupta, is that it does not provide a satisfactory accounting of the reorganized debtor's future tax liability. The debtor fails to explain how his anticipated tax liability on his projected $26,000 monthly income is only $3,300 a month or how much his monthly taxes will be on the projected increases in the future.

---

[14]  Neither the wife nor the business partner was at the hearing, so they did not testify, nor were they available for cross-examination. Instead, each signed a document entitled "Written Confirmation to Make Plan Payments." The debtor made a proffer of these two documents, so the documents were not entered into the record as evidence.

IV. Conclusion

The debtor earns a substantial income, and the dollar value of the property he is attempting to retain is likely nowhere near as large as is indicated in his schedules. Additionally, soon, the debtor should have an actual dollar number to put to the claim filed against him by Gupta.[15] The court does not think this is a hopeless case for reorganization, but the court cannot confirm the plan that is currently before the court. The debtor should probably rethink his approach to formulating a plan that meets all of the many requirements of an individual Chapter 11 plan should he chose to submit another plan for confirmation.

New Orleans, Louisiana, December 13, 2018.

*J. A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge

---

[15] The trial on the Gupta claim is scheduled for February 11, 2019.